## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF IDAHO

---

In Re:

**MARTHA M. FORD,**

        **Debtor.**

**Bankruptcy Case
No. 11-40309-JDP**

---

**MEDICAL RECOVERY
SERVICES, LLC,**

        **Plaintiff,**

**vs.**

**MARTHA M. FORD**

        **Defendant.**

**Adv. Proceeding
No. 11-8034-JDP**

---

## MEMORANDUM OF DECISION

---

**Appearances:**

Bryan Zollinger, SMITH, DRISCOLL & ASSOCIATES, Idaho Falls,
Idaho, Attorney for Plaintiff.

MEMORANDUM OF DECISION - 1

**Introduction**

In this § 523(a)(4)[1] adversary proceeding against chapter 7 debtor,

Defendant Martha Ford ("Debtor"), Plaintiff Medical Recovery Services,

LLC ("Creditor") has filed a motion for default judgment.  Having

considered the Creditor's submissions in support of its motion, and

applicable law, the Court determines Creditor is not entitled to a default

judgment.  This Memorandum explains why.[2]

**Background[3]**

In October 2006, Debtor apparently sought medical services for her

minor son from Teton Clinical Pharmacy ("Teton").  Teton, in turn, was a

subcontractor to Alliance Health Services, LLC ("Alliance").  To receive

treatment on behalf of her son, Debtor was required to sign a Client

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037.

[2] The Court sets forth its conclusions of law herein.  Rule 7052, 9014.

[3] This background information is taken from Creditor's complaint, and Creditor's pleadings, affidavits, and exhibits submitted in support of its motion for default judgment.

MEMORANDUM OF DECISION - 2

Agreement and Consent for Health Care Products ("Agreement").

Included in the Agreement was an Assignment of Insurance Benefits,

which provided:

> I hereby assign and transfer to [Alliance] and/or
> [Teton], any and all rights to receive payment of
> insurance benefits.  This assignment of benefits
> includes all . . . benefits, which are otherwise
> payable to me for products and services
> provided. . . .  I understand that this document
> constitutes a legally binding assignment, and is
> not a mere authorization to collect benefits on my
> behalf. . . .  In the event that my insurance carrier
> does not honor this assignment of benefits, I
> understand that all correspondence and
> payments for products or services provided by
> [Teton] may be sent directly to me.  I agree that
> when such payments are received, I will
> promptly submit them to [Teton] for payment of
> my bill.  I understand that I can make payment of
> services by either personal check or by endorsing
> the insurance payment to [Teton] and my
> signature.

Teton provided $30,274.89 worth of services on behalf of Debtor's

son.  Blue Cross of Idaho ("Blue Cross"), Debtor's insurance carrier, did not

pay Teton, but, rather, paid $27,274.89 directly to Debtor.  Although she

had agreed to do so, Debtor did not turn those funds over to Teton or

MEMORANDUM OF DECISION - 3

Alliance.  In September 2010, Teton and Alliance assigned and transferred

their claims against Debtor to Creditor.

Debtor filed a chapter 7 bankruptcy petition on March 11, 2011, Case

No. 11-40309-JDP, and, on April 1, Creditor initiated this adversary

proceeding to except its medical services debt from discharge under

§ 523(a)(4).  Dkt No. 1.  When Debtor did not respond to Creditor's

properly-served complaint by early May 2011, Creditor sought and

obtained entry of a default against Debtor from the Clerk of Court.  Dkt

No. 8.  Creditor filed a motion for default judgment against Debtor on May

11, 2011.  Dkt No. 9.  After being unable to submit adequate proof of its

right to a default judgment at a hearing conducted by the Court on July 12,

2011, the Court offered Creditor another opportunity to submit proof in

support of its claim for relief, this time via written submissions.  *See*

Minutes, Dkt No. 16.  Creditor then filed a second Motion for Default

Judgment on February 6, 2012, together with a supporting affidavit and

MEMORANDUM OF DECISION - 4

documents.  Dkt Nos. 22, 23.[4]

## Discussion

Upon entry of a clerk's default against a defendant, FED. R. CIV. P.

55(b), as incorporated by Rule 7055,  allows the court to enter default

judgment in a plaintiff's favor.  Whether to grant default judgment is a

matter submitted to the trial court's discretion.  *Aldabe v. Aldabe*, 616 F.2d

1089, 1092 (9th Cir. 1980).  In exercising that discretion, a court may

consider several factors, including:  "(1) the possibility of prejudice to the

plaintiff, (2) the merits of [the] plaintiff's substantive claim, (3) the

sufficiency of the complaint, (4) the sum of money at stake in the action, (5)

the possibility of a dispute concerning material facts, (6) whether the

default was due to excusable neglect, and (7) the strong policy underlying

the Federal Rules of Civil Procedure favoring decisions on the merits."

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).  In this action, the

---

[4]  Creditor's motion for default judgment is made "pursuant to I.R.C.P.
55(b)(1) and/or I.R.C.P. 55(b)(2)."  Of course, the Idaho Rules of Civil Procedure
have no application in this federal litigation.  The Court presumes Creditor
intended to move for default judgment pursuant to Rule 7055 and Fed. R. Civ. P.
55(b).

MEMORANDUM OF DECISION - 5

balance of these factors weighs against granting Creditor's motion for

default judgment.

At least for now, Creditor will not be prejudiced if default judgment

is not entered.  It will retain its claim against Debtor, and Creditor may

continue to pursue Debtor's participation in the present adversary

proceeding.[5]

Moreover, based upon the allegations of its complaint, and the proof

offered by Creditor to date, Creditor has not shown it is entitled to relief on

its § 523(a)(4) claim.  Section 523(a)(4) provides:

> (a)  A discharge . . . does not discharge an
> individual debtor from any debt –
> ****
> (4)  for fraud or defalcation while acting in
> a fiduciary capacity, embezzlement, or
> larceny;
> ****

Thus, a debt may be excepted from discharge pursuant to § 523(a)(4) under

---

[5]  Debtor did not appear at a scheduled deposition, and the Court has
relied upon her failure to cooperate in discovery as an additional basis for
finding that Debtor is in default in this action.  Creditor has not, however, taken
any additional steps to compel Debtor to appear and testify in this litigation as a
means of establishing grounds exist to except Creditor's debt from discharge.

MEMORANDUM OF DECISION - 6

any of three different theories.  While Creditor's complaint asserts Debtor

engaged in "wrongful conduct within the meaning of [§ 523(a)(4)]," it does

not specify which § 523(a)(4) theory correlates to the asserted "wrongful

conduct."  The Court will therefore briefly address each.

First, a creditor may prove a debt is excepted from discharge

pursuant to § 523(a)(4), if "(1) an express trust existed, (2) the debt was

caused by fraud or defalcation, and (3) the debtor acted as a fiduciary to

the creditor at the time the debt was created."  *Banks v. Gill Distrib. Ctrs.,*

*Inc. (In re Banks)*, 263 F.3d 862, 870 (9th Cir. 2001) (quoting *Otto v. Niles (In*

*re Niles)*, 106 F.3d 1456, 1459 (9th Cir. 1997)).  The term "fiduciary," in this

context, is to be narrowly interpreted, covering only fiduciary relationships

arising from express trusts imposed before the wrongdoing that caused the

debt.  *Lewis v. Scott (In re Lewis)*, 97 F.3d 1182, 1185 (9th Cir. 1996).  To

create an express trust, two parties must intend to create a trust

relationship, use appropriate "trust" language, and identify ascertained

trust res.  *See Lovell v. Stanifer (In re Stanifer)*, 236 B.R. 709, 715 (9th Cir. BAP

1999).

MEMORANDUM OF DECISION - 7

Here, there is no proof of the existence of any express trust. While, in the Agreement, Debtor agreed to forward any insurance funds paid to her by her insurer on account of Teton's medical services, the Agreement's language does not evidence an intent to create a trust. The Agreement does not contain any reference to a trust, does not specify trust res, and Creditor's complaint does not otherwise plead the existence of an express trust. Based on the information in Creditor's complaint, it is unlikely an express trust was created, and it is also unlikely there was a § 523(a)(4) fiduciary relationship.

Second, under § 523(a)(4), a creditor can except from discharge a debt resulting from the debtor's embezzlement. In the nondischargeability context, embezzlement is defined as "the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come." *Transam. Commercial Fin. Corp. v. Littleton (In re Littleton)*, 942 F.2d 551, 555 (9th Cir. 1991) (quoting *Moore v. United States*, 160 U.S. 268, 269 (1885)). Thus, there are three elements to embezzlement: "(1) property rightfully in the possession of a nonowner;

MEMORANDUM OF DECISION - 8

(2) [the] nonowner's appropriation of the property to a use other than

which [it] was entrusted; and (3) circumstances indicating fraud." *Id.*

(quoting *Nat'l Bank of Commerce of Pine Bluff v. Hoffman (In re Hoffman)*, 70

B.R. 155, 162 (Bankr. W.D. Ark. 1986)).

Creditor has not pled or otherwise demonstrated by proof that

Debtor did not hold an ownership interest in the $27,274.89. Also, Creditor

has not shown it "entrusted" the insurance money to Debtor for a

particular use, and that Debtor applied the payments to another use.[6]

Finally, Creditor has not alleged circumstances indicating fraud; rather, it

relies primarily on Debtor's apparent breach of contract.

Third, a debt may be excepted from discharge if it results from

larceny. For § 523(a)(4) purposes, larceny is defined as a "felonious taking

of another's personal property with intent to convert it or deprive the

owner of the same." *Ormsby v. First. Am. Title Co. of Nevada (In re Ormsby)*,

591 F.3d 1199, 1205 (9th Cir. 2010) (quoting 4 COLLIER ON BANKRUPTCY

---

[6] While the Agreement's language recognizes insurance payments might
be made directly to Debtor, there is no indication Creditor "entrusted" those
payments to Debtor for a particular purpose.

MEMORANDUM OF DECISION - 9

¶ 523.10[2] (15th ed. rev. 2008)).  "Felonious," in this context, means done

with "an evil heart or purpose," maliciously, wrongfully, or out of villainy.

*Id.* at n.4.

Creditor's complaint does not sufficiently allege conduct or acts

showing Debtor committed larceny.  Debtor did not "take" property

belonging to Alliance or Teton; the $27,274.89 was given to Debtor by Blue

Cross as the beneficiary of her insurance policy.  There is also no indication

Debtor acted "feloniously," or with malicious intent.[7]

Section 523(a) exceptions to discharge are to be strictly construed in

debtors' favor, consistent with the Code's general policy of favoring

debtors' "fresh start."  *See Searcy v. Ada Cnty. Prosecuting Atty's Office (In re*

*Searcy)*, 463 B.R. 888, 891 (9th Cir. BAP 2012) ("[E]xceptions to discharge

generally are to be construed strictly in favor of the debtor and against

---

[7]  The lack of intent-related allegations in Creditor's complaint would also likely be fatal were Creditor to pursue amendment to state a claim for relief under § 523(a)(6).  To obtain such an exception to discharge, a creditor must prove that, among other facts, the debtor deliberately and intentionally inflicted injury on the creditor.  *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998).  Creditor's complaint does not state, or even  imply, that, by failing to turn over the insurance proceeds, Debtor intended to injure Creditor.

MEMORANDUM OF DECISION - 10

those seeking to except debts from the debtor's discharge."); *Raiman v. State*

*Bd. of Equalization of the State of Cal. (In re Raiman)*, 172 B.R. 933, 938 (9th Cir.

BAP 1994) ("[E]xceptions to discharge under Section 523(a) are strictly

interpreted in favor of the "fresh start" policy of the Code."). In this

instance, primarily because Creditor's complaint does not show Creditor

would be successful on its substantive § 523(a)(4) claim, that policy clearly

favors denying Creditor's motion for default judgment pursuant to

§ 523(a)(4).

## Conclusion

Creditor's motion for default judgment will be denied in a separate

order. In addition, because Creditor has been afforded at least two

opportunities to prove up its right to relief, and has been unable to do so,

the order will require Creditor to show cause why this action should not

be dismissed.

///

///

///

MEMORANDUM OF DECISION - 11

Dated:  March 26, 2012

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION - 12